UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RA'SEAN CURTIS,

                Petitioner,              Case No. 4:23-cv-11391
                                                                   Hon. F. Kay Behm

v.

JOHN CHRISTIANSEN,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO <u>APPEAL IN FORMA PAUPERIS</u>**

Ra'sean Curtis ("Petitioner") filed this petition for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his Washtenaw Circuit Court jury trial conviction of first-degree murder, MICH. COMP. LAWS § 750.316(a), armed robbery, MICH. COMP. LAWS § 750.529, and felony-firearm. MICH. COMP. LAWS § 750.227b. Because none of the three claims raised in the petition merit habeas relief, the petition will be denied.

I

A

Petitioner's convictions stem from the August 24, 2017, shooting death of Allen Shevrovich. Shevrovich was a small-time marijuana dealer in Ypsilanti. On the evening of the incident, he was in a car with his fiancé, Kellsey Brehmer, and an associate, Dallas Stone. Stone had arranged for Shevrovich to sell $125 worth of marijuana to David Skinner, someone Stone knew from high school.

Brehmer drove Shevrovich and Stone to a residential neighborhood in Ypsilanti to complete the sale. Stone spotted Skinner and a man he did not know. Brehmer stopped, and Skinner and the other man got into the back seat of the car. A dispute quickly developed about the weight of the marijuana, prompting Shevrovich to pull out a knife and accuse Skinner of attempting to rob him. The man with Skinner then pulled out a handgun and shot Shevrovich in the head, killing him. Skinner and the other man fled from the scene.

Skinner was quickly identified by police as one of the two men involved, as Stone knew him from high school. But neither Stone nor Brehmer knew the shooter. Four days after the shooting, on August 28,

2017, Brehmer came to the police station and told investigators that she had found a picture of the shooter, later identified as Petitioner Curtis, posing in photos with Skinner on Facebook. (ECF No. 8-1, PageID.166.) Brehmer told investigators that she was 90% sure that Curtis was the shooter. (*Id.*) Investigators assembled a photo lineup that included a photo of Curtis and showed it to Stone the next day. Stone said he was 80% that Curtis was the shooter. (*Id.*, PageID.167.)

Almost a year later, on June 7, 2018, Skinner finally told police that Curtis was the man who was with him during the incident. (*Id.*, PageID.169-73.) A few days later, Brehmer was shown a photo lineup that included another photo of Curtis. (*Id.*, PageID.173.) Brehmer said that she was now 100% sure Curtis was the shooter, that she recognized him from his face, and that her prior uncertainty was due to Curtis' hairstyle being different from the Facebook photo. (*Id.*) A live lineup was held with Petitioner on September 28, 2018. (*Id.*, PageID.178.)

Prior to the joint trial, Petitioner complained at a pretrial hearing that his defense attorney was not adequately representing him. (ECF No. 9-5, PageID.282-84.) He complained that his attorney failed to object to an improper lineup procedure. (*Id.*, PageID.283.) He requested

3

to "fire" his attorney. (*Id.*, PageID.282.) The trial court treated this as a request for substitute counsel. (*Id.,* PageID.283-84.)

On the first morning of trial, defense counsel moved to withdraw, informing the court that Petitioner had sued him in federal court, and the case had been summarily dismissed. (ECF No. 9-9, PageID.432.) Petitioner informed the court that he was requesting the appointment of substitute counsel. (*Id.*, PageID.433.) The trial court denied the motion. (*Id.*, PageID.434-35.)

At trial, the prosecution's case relied primarily on testimony from Stone (ECF No. 9-10, PageID.708-55) and Brehmer (*id.*, PageID.755-73) to establish Petitioner's identity as the person who shot and killed Shevrovich. (*See also* ECF No. 9-18, PageID.1251-52.)

Defense counsel did not attempt to contest Petitioner's identification as the shooter. Instead, defense counsel asserted that Petitioner justifiably shot Shevrovich because he reasonably believed that Shevrovich was going to attack Skinner with the knife or another weapon. (ECF No. 9-12, PageID.1067-74.)

The jury found Petitioner and Skinner guilty as charged, and the Court subsequently sentenced Petitioner to life imprisonment for the murder and lesser terms for the other offenses.

B

Following his conviction and sentencing, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His brief on appeal raised two claims, both of which he presents in his federal habeas petition:

> I. Mr. Curtis advised his trial attorney that he was not present at the time of the murder for which he was charged and that, at that time, he did not match the initial description of the shooter. Trial counsel did not investigate these facts, but simply proceeded to go to trial on a defense of others theory. In failing to investigate, did trial counsel's performance deny Mr. Curtis of his right to effective assistance of counsel?
>
> II. Mr. Curtis told the trial court that he wanted to 'fire' his trial attorney. The trial court assumed, without asking him, that Mr. Curtis expected the trial court to appoint different counsel. Mr. Curtis says that he was willing to proceed in pro per. Did the court's failure to question Mr. Curtis about his right to proceed in pro per violate Mr. Curtis' right to self-representation?

(ECF No. 9-18, PageID.1336.)

The Michigan Court of Appeals affirmed in an unpublished opinion. *People v. Curtis*, No. 351296, 2021 WL 2619725 (Mich. Ct. App. June 24, 2021).

Petitioner then filed a pro se application for leave to appeal in the Michigan Supreme Court. The application raised the same claims raised in the Michigan Court of Appeals, and it also raised five additional claims, including a conflict of interest claim that Petitioner presents in the instant petition:

> III. My trial lawyer Robert Dawid was a conflict of interest threw out my whole case due to the fact that on January 22, 2018, a crime stoppers tip made me a [sic] open suspect to the crime that happen in University Green Apartments that occurred on the date of January 11, 2018. The conflict is Mr. Dawid was already representing the defendant on the case from January 11, 2018, before he was appointed to me and he knew he was a conflict without informing me of so and me and the defendant on that case was at the time going to court at the same time.

(ECF No. 9-19, PageID.1438.)

The application was denied by standard form order. *People v. Curtis*, 971 N.W.2d 624 (Mich. 2022) (Table).

II

Review of a § 2254 habeas petition is governed by the heightened standard set forth in the Anti-Terrorism and Effective Death Penalty

Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who raise claims previously adjudicated by state courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted). Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, a state court's factual

7

determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

III

A

Petitioner first claim that he was denied the effective assistance of counsel when his trial attorney failed to present a mistaken identification defense rather than a defense-of-others defense. Petitioner asserts that he told his counsel that he was not present at the scene and that Brehmer's identification of him was unreliable based on her description to police.

After reciting the applicable standard governing claims of ineffective assistance of counsel, the Michigan Court of Appeals denied the claims on the merits:

> We conclude that Curtis has failed to demonstrate that trial counsel's performance did not constitute sound trial strategy. In an unsworn statement attached to Curtis's brief on appeal, which is not part of the record, appellate counsel indicates that he spoke with Curtis and trial counsel, that both men stated that Curtis had informed trial counsel that he was not present, that trial counsel found the denial unbelievable, that trial counsel claimed that Curtis later admitted being present, and that Curtis denied making that admission. Brehmer had initially described the shooter to

8

police as having a "short tapered afro." In initial photo lineups in August 2017 that included a photo of a known associate of codefendant Skinner, but who was not Curtis, Stone and Brehmer could not identify the shooter. It appears that Curtis's photo was not included in those photo arrays. A few days later, Brehmer contacted law enforcement with an identification of Curtis as the shooter after seeing his Facebook page. In subsequent photo lineups, Stone identified Curtis as the shooter with 80% certainty and Brehmer identified Curtis as the shooter with 100% certainty. Stone noted to police "that he recognized [Curtis] by his face, adding that his hair didn't look like that because he was wearing a hoodie or something on his head." At trial, both Stone and Brehmer identified Curtis as being present in the car and shooting Shevrovich in the head.

> Under these circumstances, we cannot conclude that trial counsel's performance fell below an objective standard of reasonableness. *People v. Toma*, 462 Mich. 281, 302 (2000). Viewed objectively, the theory that Curtis was defending Skinner from a knife assault by Shevrovich is certainly more compelling than the defense that Curtis was not present at the crime scene. We note that Curtis does not allege or identify any particular alibi. Faced with two eyewitnesses who were sitting in the same car with Curtis and identified him as the shooter, we cannot criticize trial counsel for opting in favor of a defense-of-others strategy. The apparent erroneous description by Brehmer of Curtis's hairstyle could have been easily explained by the prosecution given the hoodie, and Brehmer was quite certain that Curtis was the shooter. The fact that the chosen defense was ultimately unsuccessful does not equate to ineffective assistance of counsel. *See People v. Stewart*, 219 Mich. App. 38, 42 (1996).

*Curtis*, 2021 WL 3233923, at *3-4.

The state court decision involved a reasonable application of the clearly established Supreme Court standard. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of trial counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair proceeding. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. A reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded to trial attorneys combined with that owed to state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were

11

reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Here, the facts of the case suggested two possible avenues of defense: mistaken identification or defense of others. Because neither eyewitness knew Petitioner, and because there was no physical evidence linking Petitioner to the crime, there was a reasonable basis for considering a mistaken identification defense. The prosecutor's case primarily relied on the fact that Brehmer and Stone identified Petitioner in photo lineups. At trial, they both expressed certainty as to their identification of Petitioner even though they placed their initial confidence at 80 or 90%.

A defense of others theory was also reasonably supported by the facts. The only two eyewitness statements indicated that Shevrovich had pulled a knife out on Skinner, though he had put the knife down and faced away from Petitioner before being shot.

The decision which of the two defenses to present at trial, or the option of presenting both in the alternative, was a strategic question of the kind *Strickland* cautions a reviewing court against second-guessing. *See, e.g., Johnson v. Gidley*, 2016 WL 540720 , 2016 U.S. Dist. LEXIS

16728, *14 (E.D. Mich. Feb. 11, 2016) (claim that defense counsel should have pursued self-defense rather mistaken identity amounted to "classic case of second-guessing trial counsel's trial strategy"); *Lewis v. Russell*, 42 F. App'x 809, 810-11 (6th Cir. 2002) (state court reasonably deferred to trial counsel's decision not to pursue inconsistent theories of defense); *Mejia v. Corrigan*, 2023 U.S. App. LEXIS 1017, *7 (6th Cir. Jan. 17, 2023) (reasonable for state appellate court to not second-guess defense counsel's strategy to rely on cross-examination rather than present an expert witness).

On the record presented, it does not appear that professionally competent representation demanded that either of the two available defenses be the one presented at trial. Neither mistaken identity nor defense of others was a far superior defense to the other. The fact that the defense of others theory was not successful does not mean that defense counsel was ineffective for presenting it. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Nor was counsel obligated to present both defenses in the alternative. *Lewis, supra.*

13

The Michigan Court of Appeals reasonably deferred to defense counsel's strategic decision to present a single defense centered on the fact that the victim pulled a knife on Skinner. Petitioner fails to demonstrate that the state appellate court unreasonably applied the settled Supreme Court standard in rejecting his claim.

B

Petitioner next asserts that he was denied his Sixth Amendment right to counsel by his counsel's conflict of interest. Petitioner claims that his trial attorney also represented a man named Jershawn Whitfield at the time of his trial. Petitioner says that he was a suspect in an unrelated case in which Whitfield was the defendant. Respondent asserts that the claim is unexhausted because it was never presented to the Michigan Court of Appeals, and that alternatively, the claim is without merit.

The Court may deny relief on the merits of an unexhausted claim. 28 U.S.C. § 2254(b)(2). In *Strickland*, the Supreme Court recognized that in cases involving "an actual conflict of interest" that "adversely affected [counsel's] performance," ineffective assistance of counsel can be presumed. *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348-49

(1980)). In *Mickens v. Taylor*, 535 U.S. 162, 175 (2002), the Court held that this presumption did not apply where the claimed conflict of interest involved the successive representation of defendants in different proceedings.

In the aftermath of *Mickens*, the Sixth Circuit held in *Smith v. Hofbauer*, 312 F.3d 809 (2002), that "clearly established" Supreme Court precedent for AEDPA purposes does not extend the presumed-prejudice standard in *Sullivan* beyond the context of joint representation during the same proceeding. *Id.* at 817; *see also Stewart v. Wolfenbarger*, 468 F. 3d 338, 351 (6th Cir. 2006). In cases other than joint concurrent representation, the ordinary *Strickland* standard applies. *See Benge v. Johnson*, 474 F.3d 236 (6th Cir. 2007).

Petitioner's claimed conflict of interest does not arise from multiple concurrent representation of joint defendants at the same trial. Whitfield, whoever he was, was not a defendant or suspect in Petitioner's case. Rather, Petitioner obliquely asserts that he was a suspect in a case arising from an unspecified January 11, 2018, crime in which Whitfield was a defendant. (ECF No. 1, PageID.6.) The presumed prejudice standard enunciated in *Sullivan* is inapplicable to this claim.

15

Instead, the *Strickland* standard applies, and Petitioner must demonstrate actual prejudice due to his trial counsel's representation of Whitfield in this other proceeding.

Petitioner does not even attempt to demonstrate *Strickland* prejudice. Petitioner does not provide any argument attempting to show that his counsel's representation of Whitfield adversely affected his performance in Petitioner's case. Petitioner merely asserts is that he was a suspect in Whitfield's case. Because Petitioner fails to allege or demonstrate *Strickland* prejudice, the claim is without merit.

C

Finally, Petitioner claims that he was denied his Sixth Amendment right to self-representation when the trial court failed to question him if he wanted to represent himself after he announced that he wanted to fire his attorney. The Michigan Court of Appeals rejected the claim on the merits:

> The record very clearly demonstrates that Curtis sought substitute appointed counsel, not self-representation. There is no external indication whatsoever that Curtis wished to represent himself. The issue regarding Curtis' request to terminate his attorney was discussed on the record multiple times, and the court noted that the issue had also been extensively discussed off the record. It is noteworthy that the parties continuously framed Curtis's

16

request as one for substitute appointed counsel and that Curtis never corrected them. Curtis himself spoke on the topic multiple times and never informed the trial court that his request was being misunderstood or misconstrued by the court. In fact, at a pretrial hearing, the trial court asked Curtis to explain what he meant when he said, "I want to fire my lawyer." And Curtis simply spoke about an alleged problem with counsel's handling of a lineup. At trial, Curtis stated, "I just would like a new attorney so we could have a fair trial." As Curtis never indicated or suggested that he wished to represent himself and affirmatively stated just the contrary, the trial court did not deny defendant his right to self-representation. The court was not obligated to explore sua sponte whether Curtis wanted to represent himself when he did not even hint at that possibility. We conclude that reversal is unwarranted.

*Curtis*, 2021 WL 2619725, at *2.

Criminal defendants have a constitutional right to conduct their own defense at trial if they voluntarily and intelligently elect to do so. *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975). However, the right to self-representation is not absolute. *Martinez*, 528 U.S. at 161. Nor is it automatic. A defendant's request for self-representation must be made clearly and unequivocally. *See Faretta*, 422 U.S. at 835; *see also United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1994).

The record shows that on the first morning of trial, defense counsel informed the court that Petitioner had sued him and would like

17

a new attorney. (ECF No. 9-9, PageID.432-33.) Petitioner did not correct his counsel and inform the court that he was requesting to represent himself. Rather, Petitioner confirmed his counsel's statement and stated: "I just would like a new attorney so we can have a fair trial." (*Id.* PageID.433.)

Based on this record, the Michigan Court of Appeals found that Petitioner did not make a clear and unequivocal request to represent himself and denied the claim on that basis. A state court's factual finding, such as this one, is presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Petitioner offers nothing to counter the factual finding by the Court of Appeals that he did not invoke his right to self-representation. The claim was therefore reasonably denied by the state appellate court.

As all of Petitioner's claims are without merit, the petition for writ of habeas corpus is denied.

## IV

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C.

§ 2253(c)(1)(A); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of any of Petitioner's claims. The Court will therefore deny a certificate of appealability.

The Court also finds that because any appeal of this order would be frivolous, permission to appeal in forma pauperis will likewise be denied. FED. R. APP. P. 24(a).

V

**THEREFORE, IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to appeal in forma pauperis is **DENIED**.

**SO ORDERED**.

<u>s/F. Kay Behm</u>
Hon. F. Kay Behm
United States District Judge

Dated: September 12, 2024